In U.S. v. FIOLA, the Supreme Court held that Section 111 liability attaches if the actor has the criminal intent to do the act set forth in the statute, which in this case would mean the criminal intent to forcibly assault, impede, or interfere. This is specific intent language in the elemental sense. Also, the instruction used for 111 below allowed the used in this instruction below as, quote, any intentional and voluntary attempt or threat to do injury. All attempts are specific intent crimes. As far as I know, all NCOA crimes are specific intent crimes, Your Honor. So the instruction... Well, counsel, your time's short. What about the Hansen case? In fact, we need to start the clock. You got extra time. Just a second or two. Don't... I'm being a smart aleck. I just wasted it, by the way, talking about it. That's okay, Your Honor. But the Hansen case. Address the Hansen case and why that doesn't control this case. Well, I think what has happened with Hansen and other circuit opinions around the country is that later these courts are holding that Section 111 is a general intent crime, citing FIOLA as controlling authority for that proposition, but they're confusing the issue of the common law simple assault intent requirement for simple assault with the knowledge requirement of the victim's official status. The latter is not required to be proved after FIOLA. And in Hansen, there's... I'd say it's wrongly decided. It's confusing the issue. The fact is that, in my view, or the common law, there's authority stating that if the statute is missing an element, the rules for statutory construction say that Congress meant for the common law rule to apply. And it's my understanding that simple assault of common law is a specific intent crime and included attempt. Hansen was just wrongly decided. It listed the elements for a 111 violation, but there wasn't a lot of discussion about that. I will note that willfulness... Hansen did say that one of the elements is willfully, and so did Potter. Potter, we cite for our position. Willfulness is defined by this court as a specific intent to do an act forbidden by law. Well, Hansen's old. It's 1980. What has the United States Supreme Court decided since Hansen about this statute that says Hansen's wrong? I'm not aware of any authority from the U.S. Supreme Court about Section 111 and the scientific requirement. I would note, though, that in FIOLA, it holds a few things. One of the things that it held is specifically, quote, we hold that in order to incur liability under Section 111, an actor must attain merely the criminal intent to do the acts therein specified. Here, the criminal intent to forcibly assault, impede, or interfere. That, in our view, is a specific intent crime. I believe the majority and the dissent both agree that Section 111 has a scientific requirement. What about the jury instructions, the indictment, the verdict form in this case that actually says voluntarily and intentionally? The district court, as I understand it in this case, instructed the jury that it had to find that Mr. Gustis acted voluntarily and intentionally. Absolutely. It goes on to say voluntarily and intentionally. That's exactly right. Any intentional and voluntary attempt, and it goes on to include, it defines assault as well in the jury instruction as also an attempt as well. Yes, that's correct. If the district court instructed the voluntary and intentional, should that trigger the defendant's ability to present a defense to that? Would you agree that under Hansen that's not necessary? Under Hansen, Hansen listed the elements of Section 111 included willfulness, and this instruction in this case, that phrase is a specific intent phraseology in our view. I'm just trying to put together the idea that it's not a specific intent crime, which is why you didn't get your defense, correct? That's what the district court held? That's correct. It was briefed by the government, and the district judge just wrongly agreed with the government that this section is a, that this statute is a general intent crime. But it was instructed to the jury, what you're saying, in your representation, it was instructed to the jury as a specific intent crime. Well, I would interpret that language in the instruction as requiring a scienter requirement the criminal intent to intentionally, the word intentionally, look at FIOLA, the intent to assault, the criminal intent to do the acts set forth in the statute. This is all specific intent language in the elemental sense. I picked up this case, I didn't try this case below, my colleague did, and so when I, when I, before I read the briefs, I took my old criminal law treatise off the shelf from law school. I hadn't opened it since then. Professor with Joshua Dressler, Understanding Criminal Law, I went straight to the section on specific versus general intent crimes. The terms, and this is quoting Professor Dressler, the terms specific intent and criminal intent are the bane of criminal law students and lawyers. So I think that, I think that we're seeing this issue, it's in our, you know, it's coming from the common law, it's a little arcane, here we are arguing it, but it has real world consequences for our client. If the intoxication instruction is still on the books, whether or not we correctly . . . Well, thank you, but since your time is short, address the point here, Judge Kelly says, you know, the jury instruction has got one theory and the law in the sky has got another theory, the Hansen case has another theory. Where does that leave your client? Think about it from your client's perspective. What's your best argument for your client in this situation? Well, the jury instruction here is based on the court's committee comments and the footnotes in case law, and I reviewed these footnotes. There is a Yates, now this case is not in the brief, Your Honor, but it is in the court's committee comments. In Yates, the court looked to the definition of . . . the common law definition of simple assault, and it's, in my view, it was a specific intent crime then, it still is, and so, you know, for these reasons, I just think that a lot of these other courts have misapplied FIOLA, focusing on that knowledge of the victim's official status, but this crime has always been a specific intent crime from the very beginning. And the language used in the statute, or in the jury instruction, supports our view. I mean, what is . . . I don't think it needs a lot of parsing. Intentionally assaulted, you know, with the . . . he assaulted with the intent to forcibly, you know, impede, interfere. His conscious objective, they have to prove that Augustus' conscious objective was to cause the harm listed out in Section 111, and that is a specific intent. Suppose for a second we see it as your client got a break in the trial court because there was a tougher standard than required by law, intentionally and voluntarily. How does that translate into a break on appeal? Well, he has his first felony conviction today, and, well, that's a good, fair point, but ultimately, you know, the issue . . . the district court wrongly decided that this was a general intent crime. He was denied the opportunity to present a affirmative defense to his charge, and this is just a, you know, due process and fundamental fairness of his proceeding below, and these are the reasons why this court should reverse the conviction, and, you know, whatever, if that happens, whatever occurs later, you know, is what it is. Thank you, counsel. I was taking that you wanted to reserve for rebuttal, right? Yes, please. Yes, by the way, you and I were looking at each other. We'll make it articulate. Ms. Jegley. Good morning, Your Honor. I think the discussion here that I've just heard really demonstrates the difficulty that the lawyers were faced with here in terms of the law, and I have read cases, and I can't cite the case to the court, but I have reread FIELA, and if you go back and look at the opinion, the court was not asked to address whether this was a specific or general intent statute. Instead, and at least on the threshold question as to whether or not an assailant would incur criminal liability only if they knew the victim was a federal officer or employee engaged in their, in the performance of their official duties, but there's another part of FIELA that deals with whether or not conspiracy to commit assault on a federal employee requires a higher mental standard, and FIELA concluded that it did not, and that's going to be 420 U.S. 6, there's a discussion that starts at 686 and continues through 695, so they concluded that the, in terms of specific intent, and to the extent that they addressed it, it only had to do with whether or not a conspiracy to commit assault required a higher mental state, and they concluded that it did not. Obviously, our position is that Hansen is controlling, and I've set out a number of options in my brief about how the court can treat that precedent, and I won't go into those in detail, but Hansen was decided in 1980, and it wasn't until 1992 that this court discussed in precedent that there was conflicting case law in the circuit about general versus specific intent, and then I have also pointed out that of the other circuits who have considered the issue, that there are, I think there are seven other circuits that have found that a defendant acts knowingly but not with specific intent to injure, and that this is a general intent crime for purposes of those other, the other circuit court precedent. In any event, that's an option. If the court wants to look at precedent from other circuits, the majority of those who have directly addressed the issue have held that this is... Well, would you address Judge Kelly's point about the jury instruction that was actually given that says, quote, voluntarily and intentionally, unquote. And it's difficult for me to answer that question if the court views that as a higher standard in terms of mental state. How do you view the mental state of voluntary and intentional? Well, I'm not sure that it comports with willfully, so if the court is of the view that that is a higher standard, well... Do you think that's general intent? I think knowingly and intentionally would be general intent, but... What would specific intent be? Well, I think it would include some concept here that somebody is violating a known legal duty. I mean, that's certainly the standard for tax cases, so it's a higher standard of knowledge or a higher mental state than acting knowingly. Well, using the language here, what his defense was, if you just look at the instruction, instruction told the jury that they had to find that he voluntarily and intentionally did this, he proposed a defense that said, this is why I couldn't voluntarily and intentionally do this. Under that instruction, why isn't that intoxication defense appropriate? Well, I think this goes back to the fact that we have precedent that holds... Just looking at the... I guess my question is, even if we say Hanson controls, what effect does this deviation from that in the instructions have on this case and on Mr. Gustafson's ability to bring a defense to that? Well, the only way I know to answer that, Your Honor, is to say that there's no case out of the Eighth Circuit that I'm aware of that has held that voluntary intoxication is a defense to a Section 111 charge. And so, we have a situation here where there's a model jury instruction that the court, I think, presumed was correct and instructed according... relying on the precedent in Hanson. So, I think it's a difficult situation for everyone here. But the only thing I know to say, Your Honor, is that I think Hanson controls. And it may be that there was an incorrect jury instruction. But again, the government was held to a higher standard of proof than with a lesser instruction. I think it's also the way it was indicted, wasn't it? Did the indictment also have that language? I believe. I guess my only point... My clerk thinks so, for what that's worth. If that speeds it along. I just wanted to make sure. So, I guess the point there is that this seems to maybe go one step beyond whether you call it... You said you characterized it as an erroneous jury instruction. But if it's the government itself that has charged it that way, does that make it different? Your Honor, when we... All right. The only way I know to answer this is we rely on the jury instructions that the Eighth Circuit has offered in setting out the elements of the offense. And so, that's the way we charged it. Is the indictment handy to you, just to check? Yes, sir. I have it right in front of me. Good. It doesn't say voluntarily, intentionally... Yes, sir, it does. I thought so. Good. Yes, sir. And given the precedent in Hansen and the jury instruction, I'm not sure that we would have thought we were doing it correctly if we had worded the indictment otherwise. So, you think voluntarily must mean generally voluntarily and generally intentionally? Well... Your Honor, honestly, I didn't... I was relying on Hansen. I was relying on the jury instruction when we prepared the indictment. And so, I do... I have looked at the... In any event, this is what it is at this point. One other thing that I'd like to also point out here, this wasn't addressed in the argument. It goes to Mr. Gustis' state of mind. And in terms of a voluntary intoxication defense, Mr. Gustis was evaluated and found to have been competent at the time of the offense. I'd like to also point out that the brief in this case has conflated the trial record testimony about Mr. Gustis' conduct with information that was in the PSR. There was no testimony that Mr. Gustis was intoxicated. No testimony... Well, was he allowed to present that testimony? No, he was not. We moved in limine to exclude it. You can't argue there's no evidence to support something if the evidence was excluded. No, Your Honor, I'm sorry. I want to make sure. I'm not suggesting. I'm simply saying there was no evidence in the trial record, but the way the brief was... But what I'm asking is the reason there's no evidence is because the trial judge said that's not a defense. I'm excluding the evidence. That's correct, Your Honor. Well, then you can't argue that there's no evidence. I was trying to argue there was no evidence in the trial record. There was no evidence before the jury. Was there a motion in limine to exclude all intoxication evidence? Yes, sir, there was. And it was granted? Yes, sir. Proceed. Thank you. I think I have nothing to add at this point. And if the court has any questions, I'm glad to try to answer them. Seeing none, thank you for your argument. Mr. Byrd. Your Honor, with respect to Fiola, the precise issue did relate to conspiracy liability for 371 conspiracy to commit 111. The court sort of treated the two, substantive versus conspiracy, the same conspiracy is an inchoate crime. It's a specific intent crime. So just as a quick point on Fiola, with respect to the circuits, the Jim opinion in the Ninth Circuit, Your Honor, ultimately held that it was a general intent crime. But first, it did a two-step analysis. And it first looked at the common law definition of simple assault and concluded it was a specific intent crime. I'm quoting the... Did I say the seventh? The Ninth Circuit, Your Honor. And they conclude, without congressional purpose analysis, 111 appears to be a specific intent crime on the law, analyzing the law. Yes, and then, of course, I disagree with reviewing the purpose and then changing its mind. But this underscores the point that, with respect to common law, it's always been a specific intent crime. And so, intentionally, in the jury instruction, it's right there on its face, the black letter of the instruction. The committee comments, I believe, support our position as well to the jury instructions for both 111 and intoxication. Thank you for your argument, counsel. Case number 18-2303 is submitted for decision by this court.